Lawrence V. COTTRELL, Jr., et al.

v.

VIRGINIA ELECTRIC & POWER
COMPANY et al.

Civ. A. No. 67–73–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 3, 1973.

Neighborhood Legal Aid Society, Inc., Richmond, Va., for plaintiffs.

James E. Farnham, Richmond, Va., Richard D. Rogers, Jr., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Lawrence and Elaine Cottrell bring this action individually and on behalf of all others similarly situated challenging the procedures by which the defendant, Virginia Electric & Power Company ("VEPCO") terminates service to delinquency accounts. Jurisdiction is alleged pursuant to 42 U.S.C. § 1983, 28 U.S.C. §§ 1343, 2201 and 2202.

The parties are presently before the Court pursuant to several motions, to-wit:

1. Motion for summary judgment by the defendant, State Corporation Commission (S.C.C.).

2. Motion to dismiss by VEPCO.

3. Motion by Martha Phillips to intervene as plaintiff.

4. Motion for a class declaration.

Respective counsel have submitted memoranda upon the issues thus raised and same are now ripe for disposition.

The underlying facts are not in dispute. VEPCO is a public service company invested by the State of Virginia with various powers, duties and responsibilities in connection with provision of electric power service to Virginia residents. VEPCO is a monopoly and pursuant to Virginia law is supervised by the defendant S.C.C. The specific nature of that supervisory relationship will be discussed, *infra*. On November 27, 1972, the Cottrells moved to 5305 Downing Road, Apt. A, Richmond, Virginia, and on that day established service with VEPCO. A five dollar connection charge and a fifteen dollar deposit were paid. The Cottrells were not billed for this service at the time the suit was filed, on February 12, 1973, but within three weeks of commencement of service at the Downing Road address, the Cottrells received a delinquency notice in the amount of $93.16 and notified that service would be terminated if payment were not made by January 29, 1973. This was followed by another notice dated February 2, 1973, relating that the amount past due was now $98.16, and threatening termination without further notice if that amount was not paid by February 9, 1973. Plaintiffs contacted VEPCO and were informed that charges outstanding were due for services rendered them in 1972 at 101 East Williamsburg Road, Richmond. Though plaintiffs averred that they never lived at that address nor authorized anyone to contract for utility service in their names, VEPCO persisted in threatening to terminate service at 5305 Downing Road.

Upon filing this action, plaintiffs sought a temporary restraining order. The motion for same was withdrawn when VEPCO offered to hold termination in abeyance. On February 13, 1973, VEPCO determined that the Cottrells were correct after all, that a fraud had been perpetrated upon it by third parties, and has since dropped its claim against plaintiffs. As a result of the Cottrell suit, the S.C.C. has begun an "informal investigation into the internal practices and procedures" employed by VEPCO. Discussion, *infra*.

It is upon the facts recited that the pending motions are tendered. Because the respective motions by both defendants VEPCO and S.C.C. rely in part on the argument that this action is moot, the plaintiffs' motion for class declaration will be treated first.

I. CLASS DECLARATION.

The Court is satisfied that this matter is not moot. The issue presented here in this regard is similar to that in Dillard v. Industrial Commission of Virginia, C.A. 537–71–R (E.D.Va. 6/26/73). *Dillard* is a class action which challenges certain procedures by which unemployment insurance benefits are terminated. Upon the original hearing on the merits, a Three-Judge Court in this District ruled in favor of defendants. Upon appeal to the Supreme Court of the United States, 409 U.S. 238, 93 S.Ct. 566, 34 L. Ed.2d 444, the case was remanded to the District Court for a determination of whether the action was moot, it having been represented to the Supreme Court that the named plaintiff had settled his personal claim.

Upon remand, the District Court concluded the claims presented by the named plaintiff were representative and capable of repetition. As the Court stated:

While the usual rule is that an actual controversy must exist at all stages of appellate review, see United States v.

Munsingwear, Inc., 340 U.S. 36, 71 S. Ct. 104, 95 L.Ed. 36 (1950), we deal in this instance with a class action wherein the named plaintiff has been found to be an adequate representative of the named class. There can be no doubt that the justiciable issue herein is capable of repetition. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, 1973.

Defendants have cited in favor of their position Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir. 1972), cert. granted, judgment vacated 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972). *Ihrke* presented a factually similar case. Although the controversy between named parties was moot, the Eighth Circuit Court of Appeals directed the lower court to reconsider the matter anyway based on the so-called "public interest exception" to the mootness doctrine, but sustained the lower court decision declining to permit a class action. The decision of the Court of Appeals was appealed to the Supreme Court which dismissed the matter as moot.

This matter may be distinguished from *Ihrke* insofar as the class action question is concerned. Should this Court make a final determination that a class action is proper here, for the reasons stated in *Dillard, supra,* the difficulties of mootness under the "public interest doctrine" would not ensue.

At this stage a final class determination would be premature. Instead the Court will follow its usual procedure in cases of this nature where a precise class definition is difficult to ascertain absent further information, garnered by discovery procedures, presented to the Court. The Court accordingly will declare this matter to be a tentative class action for purposes of discovery. The reasons for adopting this approach have been heretofore expressed by the Court in Branch v. Reynolds Metals Co., C.A. 170–72–R (12–13–72), where it noted:

[Denying plaintiffs tentative class standing] would place plaintiffs' counsel in the anomalous position of not being able to sustain its class contentions for lack of evidentiary support yet unable to adduce such support [by discovery] by reason of its inability to prove class standing. See Gilbert v. General Elec. Co., C/A 142–72–R (E. D.Va. 2/6/73).

Accordingly, under the principle of *Dillard, supra,* the motion to declare a class action shall be granted under the aforementioned terms. This determination, in turn obviates the necessity of intervention by those averring similar claims and the motion of Martha Phillips to intervene will therefore be denied.

## II. VEPCO MOTION TO DISMISS.

VEPCO urges two grounds in support of its motion. The first, on the basis of mootness, is without merit for the reasons heretofore discussed. The second ground urged is that plaintiffs have failed to exhaust administrative remedies before the S.C.C.

The S.C.C. is empowered by Va. Code § 56–6 to hear and determine grievances against a public service corporation and does so sitting as a court of record. Arguing that this remedy is available to plaintiffs and has not been sought, VEPCO urges that this action should be dismissed for failure to exhaust State remedies. Plaintiffs respond, and the Court agrees, that 42 U. S.C. § 1983 does not require exhaustion of remedies. See generally, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961).

There is some question, however, as to whether abstention is required under the rules enunciated in Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

Plaintiffs in *Gibson* were licensed optometrists employed by a firm not a member of the Alabama Optometric Association. The association filed charges against plaintiffs and their firm for unprofessional conduct with the Alabama Board of Optometry, all members of which were members of the association.

The Board itself subsequently filed a suit in state court seeking to enjoin the firm and plaintiffs from engaging in the "unlawful practice of optometry." The association's charges with the Board were held in abeyance pending the outcome of the Board's state suit. The individual plaintiffs were dismissed from the state court suit but judgment was rendered against the firm. An appeal was taken.

Pending appeal, the Board revived the association's charges before it against the plaintiffs. Plaintiffs thereafter filed suit in the United States District Court naming as defendants the Board, its individual members and the Association. Suit was brought, as here, pursuant to 42 U.S.C. § 1983. The gravamen of the complaint was that the Board was biased and could not provide plaintiffs with an impartial hearing. A Three-Judge Court was empaneled and entered judgment for plaintiffs, enjoining the Board from revoking plaintiffs' licenses. In so ruling, the District Court concluded that (1) the anti-injunction statute did not apply; (2) Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) did not mandate exhaustion of administrative remedies.

The Supreme Court agreed. First it concluded that suits brought pursuant to 42 U.S.C. § 1983 were within the "expressly authorized" exception to the ban on federal injunctions of 28 U.S.C. § 2283. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Second, the Court stated that while exhaustion of remedies is normally required by the comity principles of

*Younger,* resort to same is not necessary where they would prove fruitless. Because the District Court concurred with plaintiffs that they would not receive a fair hearing before the Board, abstention was not required.[1] The Court also noted that abstention was not required pending the outcome of the appeal of the Board's case against the firm, as charges against plaintiffs may have survived the decision on appeal regardless of the outcome. Thus the "immediacy of prosecution" requirement of Lake Carriers Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) was satisfied. See, Lee v. Kuykendall, C.A. 505–72–R (E.D.Va.1973).

*Gibson* and Lee v. Kuykendall, *supra,* present different factual situations from this matter. Unlike plaintiffs in *Gibson,* the present plaintiffs do not seek to enjoin pending formal state review; unlike Lee v. Kuykendall, a formal adversary review is not "imminent." See, Rakes v. Coleman, 359 F.Supp. 370 (E.D.Va.1973). The application of Younger v. Harris, *supra,* is not in issue in this matter and the principles of *Gibson* in that regard are not pertinent here.[2] The Supreme Court's discussion of abstention is, however.

The Court noted in *Gibson* that

We do not think that the doctrine of abstention as developed in cases from Railroad Comm. v. Pullman, 312 U.S. 496 [61 S.Ct. 643, 85 L.Ed. 971] (1941) to Lake Carriers Assn. v. MacMullan, 406 U.S. 498 [92 S.Ct. 1749, 32 L.Ed.2d 257] (1972), required the District Court to stay its proceedings until the appellees had

1. The lower court decision against the firm was subsequently reversed, however, and the Supreme Court remanded *Gibson* for reconsideration in light of said reversal.

2. Under the rule of *Lake Carriers Assn., supra,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257, where there is no threat of formal adversary state proceedings, the usual criteria for application of declaratory relief apply. No formal adversary proceedings are contemplated here, but rather an "informal investigation." Af-

fidavit of Ernest M. Jordan, Jr., Director of Division of Public Utilities, 5/18/73. *Lake Carriers* does, however, express concern that the district courts honor the rules of comity, discussion below. The Court's views with respect to these issues are set forth in detail in Rakes v. Coleman, 359 F.Supp. 370 (E.D.Va.1973). The Court also notes that while the *Younger* doctrine evolved in the context of criminal law, *Gibson* freely applies these principles to state civil proceedings.

presented unsettled questions of state law to the state courts.

■ The abstention doctrine applies to determinative state law claims and not to choice of forum for presenting federal claims. As the Supreme Court earlier stated in *Lake Carriers, supra,* the abstention rule is not designed to require a claimant to first bring his federal claims to state tribunals:

> Similarly, the availability of declaratory relief in Michigan courts on appellants' federal claims is wholly beside the point. In Zwickler v. Koota, supra, [389 U.S. 241] at 248, [88 S. Ct. 391, 19 L.Ed.2d 444], we said:
>
> "In thus [establishing jurisdiction for the exercise of] federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, '. . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . .,' Robb v. Connolly, 111 U.S. 624, 637, [4 S.Ct. 544, 28 L.Ed. 542, 551]." Compare, *e. g.,* Askew v. Hargrave, 401 U.S. 476 [91 S.Ct. 856, 28 L.Ed.2d 196] (1971).

■ Plaintiffs here are pursuing a federal claim. Under *Lake Carriers* and *Zwickler* they may properly choose to pursue that claim in this forum rather than in state proceedings. Under these circumstances, abstention would deny plaintiffs their right to the forum of their choice and would therefore be inappropriate. Accordingly, VEPCO's motion to dismiss shall be denied.

## III. S.C.C. MOTION FOR SUMMARY JUDGMENT.

The S.C.C. bases its motion for summary judgment on four grounds:

1. Mootness.

2. Improper class.

3. Failure to exhaust state administrative remedies.

4. Noninvolvement in the alleged denial of constitutional rights.

The first three grounds have been heretofore determined to be without merit and require no further discussion. With regard to the fourth ground, the S.C.C. avers that while it has the power and authority to prescribe rules and regulations governing termination of electric service, it has not done so. It also has the authority to hear and redress grievances against VEPCO and has investigated approximately 189 complaints per year on the average over the past nine years.[3] In each case when a complaint is made with respect to termination, the S.C.C. directs VEPCO to hold further action in abeyance pending investigation. The Cottrells did not file a grievance with the S.C.C., but subsequent to the filing of this action the S.C.C. has begun an informal investigation into the procedures challenged. On the basis of these facts, the S.C.C. argues that at most its role in the Cottrell matter was "inaction," which does not afford a basis for relief.

■ While the S.C.C. may not have had any direct dealings with the Cottrells, it is nevertheless clear that by virtue of its power it retains a relationship with the tentative class. Va.Code § 56–247 requires the S.C.C. to substitute its own regulations or practices for those of a public utility which it finds unjust or unreasonable. Va.Code § 56–35 provides further that the S.C.C. shall require public utilities "to establish and maintain all such public service facilities

---

3. For the years 1970–1972, 393, 307 and 270 complaints were filed respectively. Between 1–1–73 and 5–16–73 fourteen complaints with respect to disconnection have been filed.

and conveniences, as may be reasonable and just." The Court is satisfied for the present purposes that the S.C.C. by virtue of its admitted supervisory capacity is a proper party defendant against which relief, if appropriate, may be directed.

Accordingly, S.C.C.'s motion for summary judgment shall be denied.

An order consistent with this memorandum shall issue.